## STATE vs. PARKER.

In an indictment for forgery it is necessary to set forth the instrument, charged as a forgery, in letters and figures, unless it be in the hands of the person charged with the forgery—and in that case it is necessary to aver in the indictment, that the instrument is in his possession.

*Washington*
*September,*
*1814.*

AT the term of this Court, holden in September, 1813, Ebenezer Parker was indicted for uttering, passing and giving in payment, one certain false forged and counterfeit bank note, made in imitation of a one dollar note issued by the Mechanicks' and Farmers' Bank in the City of Albany in the State of New-York,

which Bank then and there was and still is, legally established, by *Washington* and under the authority of the Legislature of the State of N. York, September, one of the United States of America, marked No. 6730, bearing date the first day of January in the year of our Lord 1812, signed by S. Southwick President, and countersigned by G. A. Worth Cashier thereof, and made payable to E. Dor or bearer on demand. The prisoner demurred to the indictment.

*Prentiss,* counsel for the prisoner, took several exceptions to the indictment; but the principal exception, and that on which the Court decided, was, that the bill charged to have been forged, was not set forth in words and figures. He contended that it was a principle of the common law, that in an indictment for forgery, it is necessary to set forth the instrument charged to be forged, in words and figures; and that this principle of the common law was recognized and settled by the Courts in the neighbouring States; in support of which he cited Crown Cir Comp. 178. 182. 217. 276. 1 Peak, 173. East's Crown Law, 975. 8 Mass. Rep. 107, Commonwealth against Houghton. He admitted that there had been many indictments in this Court like the present indictment. This novel form of an indictment for forgery, was probably introduced by prosecutors for their own convenience, but no decision of the Court had given them a legal sanction. And this he contended is not a case in which *communis error facit jus.* 3 Johnson's Cases, 299.

*Baylies,* State's Attorney. This form of an indictment has been settled by a long and uniform practice in this State. Indictments for forgery have in this State generally been drawn in this form for more than thirty years; and not one had been quashed, or held bad on demurrer, for this exception. The exception I presume has been taken, but it has never prevailed.

CHIPMAN Ch. J. Had I any doubt in this case, as I am alone on the bench, I should postpone the decision; but as I think it a very clear point, I will put neither the publick nor the prisoner to any further expense by delay.

The precedents of indictments for forgery are uniform on this point.—The instrument charged to be forged is set forth in words and figures, in all the numerous precedents which have been produ-

*Washington*
*September,*
*1814.*

State
*vs*
Parker.

ced; and all the authorities hold it necessary, unless in certain ex‑ cepted cases; one of which is where the instrument charged to have been forged is in the possession of the person charged with the for‑ gery. In such case, it is sufficient to describe the instrument, in the same manner in which it is described in this indictment, omitting to set it forth in words and figures; but the fact that the instrument is in the hands of the person charged, which brings the case within the exception, must be charged in the indictment. The common law authorities are collected, and the doctrine on this point is ably commented upon by Judge Sedgewick in the case cited from the 8 Mass. Rep. 107. There is certainly great reason for adhering strictly to these principles; the subject in which the offence is char‑ ged to have been committed, ought, in reason, to be set forth with great precision, that there may be no mistake in the proof—no pos‑ sibility of substituting one thing for another; that the accused may know precisely what he has to meet—how to prepare his defence, and how to direct his evidence. This is a right of the accused at common law—that common law which the fathers of our revolution claimed as their birth-right, and which was secured to us by the event of that revolution. The framers of our constitution constant‑ ly kept it in view, and almost the first act of our State Legislature was to declare "that so much of the common law of England, as is applicable to our local circumstances, and is not repugnant to the constitution, or any particular act of the Legislature of this State, be and is adopted as law within this State, and all Courts are to take notice thereof and govern themselves accordingly." It is from this source, the common law, that we derive rules and maxims not only for the construction of our statutes, but of the constitution itself: and, with the limitation expressed, it is the rule of property and the security of our rights; and furnishes to the Courts, in all cases, civil and criminal, a rule of decision. The Courts can no more de‑ prive a person, prosecuted for a crime, of a common law right, than they can deprive him of a statute or constitutional right: modes of practice merely they may alter, for the more safe and easy attain‑ ment of the ends of justice, so that they do not infringe any essen‑ tial right.

But, it is urged that this form of indictment has been in use in this State for more than thirty years—that is, almost from the com‑

mencement of the government; that there have been no decisions

against it, and that it ought now to be considered as the common law of Vermont established by usage.   That laws affecting essential rights, should, by custom, originate in our Courts, independent of the constitution and laws enacted by statute, and in opposition to the principles and maxims of the common law so called, is a thing I cannot understand.   It is a doctrine which ought not to be countenanced in this Court.   If admitted, we should soon, instead of a system formed and matured by the experience of ages, have a crude undigested mass, or rather farago of opinions, adopted through indolence or want of present information, and adopted and continued in practice, mostly from the same causes.   And where are the Courts to look for this common law of Vermont?  Not to the authority of decided cases, nor to the writings of the ancient sages of the law, approved through a succession of ages.—No, we must resort for the most part to the fallible memory of the Judges, or members of the bar, or to crude precedents of forms, which may in some Counties, by chance, have long passed without exception, and without notice—I say, in some Counties, because I have observed that in several Counties, indictments are drawn with a scrupulous adherence to the most approved precedents of the common law.

I would not have it understood, by any thing which I have said, that this Court is limited by the precedents of decided cases, at common law, or the researches of the numerous and profound commentators.   The common law, exclusive of positive law, enacted by statute, depends on principles.   Precedents and maxims, serve to embody and illustrate principles, to give them a fixed certainty, and afford a facility in applying them to cases as they arise, not coming within any former precedents.   I conceive that these principles will be found amply sufficient for their decision, while they preserve the analogy and symetry of the system.   The only difficulty lies in applying the proper principle, and in applying it with a due regard to analogy, which is the connecting link, and, indeed, the *sine qua non* of every other system, as well as that of law; and, without which, instead of a system, we should have merely a catalogue of individual cases, affording no illustration of principles—no data for general conclusions.

It is true that a common error sometimes establishes a common

*Washington*
. September,
1814.
State
*vs.*
Parker.

right: indeed, it is a maxim of the common law. Such cases there are, where an error, first admitted, has introduced a general custom, involving property and individual rights; such custom becomes a law to the Court, and can be superceded by act of the Legislature only. On this ground, it is suggested, that a decision against the indictment, in this case, will affect the rights of the State, derived under a long practice, and may affect former convictions which have been had on similar indictments. But it *is* impossible to conceive that the State can, under such a practice, become general, and without exception, which it certainly has not in this case, or been of ever so long a continuance, have acquired any right, or can have any interest in the support of such indictment, in violation of the guaranteed rights of the citizen, the rights of the common law, which can be varied only by the constitution of government, or by a sovereign act of the Legislature.

As to former convictions which have been had in this Court, there is no provision of law by which they can be corrected or reversed—they will not be effected—they will remain in full force.

I have extended my observations further than the case under consideration seems to require, because the same argument has before been urged in this Court, and I must say has, at times, received too much countenance, claiming the privilege of this same common law of Vermont, in favour of analogous practices, affecting essential principles, on the ground that the abuse has been suffered long to be continued.

In every view which I have been able to take of this subject, the indictment ought not to be sustained; it is a departure from ancient and established precedents—is condemned by all authorities, both ancient and modern, and violates the most settled principles of law. Let the prisoner be discharged.