## In re Homer W. Heaton's Estate.

October Term, 1915.

Present: Munson, C. J., Watson, Haselton, Powers, and Taylor, JJ.

Opinion filed November 23, 1915.

*Corporations—Stock Dividends—Declaration—Trusts—Life Tenants—Rights of in Stock Dividends—Wills—Construction—Testamentary Trust—Common Law—P. S. 1221—Force and Effect of English Decisions.*

Where there is no charter or other statutory prohibition a corporation may declare a stock dividend payable to its stockholders out of accumulated surplus, thereby changing such surplus into permanent capital.

Where the vote that declared a stock dividend recites that the dividend is from the surplus earnings of the bank, it will be presumed on review that such dividend was declared from surplus earnings available for distribution among stockholders.

It is elementary that where corporate stock is bequeathed in trust to one for life with remainder over, the life tenant takes the income, while the corpus of the trust belongs to the remainderman.

Where corporate stock is bequeathed in trust to one for life with remainder over, in determining whether the life tenant should receive a stock dividend declared on such corporate stock, the intention of the testator, if it can be gathered from the will, must govern; but, where the will does not disclose that the testator contemplated such a dividend, resort must be had to the law to determine whether such a dividend is income of the trust fund or a part of the fund itself.

Whenever a distribution of corporate earnings is made in any form, the distributive share, so far as the owner of the stock is concerned, is income, and so an incident to the ownership of the stock during the period of accumulation, although inchoate until distributed by the corporation.

There is a distinction between accretions to a trust fund, derived from earnings accumulated during the term of the trust, and the enhanced value of the trust property owing to other causes, the one being properly income, and the other not.

Under P. S. 1221, adopting the common law of England, English deci-
sions before the date of separation, as well as those after, are to be
taken merely as declarative of the common law, and not as bind-
ing precedents to be blindly followed.

Where a testator bequeathed designated corporate stock in trust, direct-
ing that the "dividends, rents, and profits" should be annually
paid to his children and grandchildren for life with remainder
over to their descendants, and the earnings of the corporation so
greatly increased during the life of the trust that a large stock
dividend was declared from such increased earnings, but still
leaving the accumulated surplus larger than at the time of testa-
tor's death, such stock dividend passed to the life tenants and not
to the remaindermen, under the rule that the life tenant should
receive all profits of the corporation accumulated during the life
of the trust and distributed by the corporation during that time,
while the remainderman should receive at the end of the term the
corpus of the trust fund undiminished in value by any distribution
to the life tenant.

APPEAL from a decree of the probate court allowing the
annual account of the appellant, the Montpelier Savings Bank
and Trust Company, as trustee under the will of Homer W. Hea-
ton, wherein the stock dividend in question was treated as income
belonging to the remaindermen.   Heard on an agreed statement
of facts at the September Term, 1914, Washington County, *Miles*,
J., presiding.   Judgment affirming the decree of the probate
court.   The appellant excepted.   The opinion states the case.

*W. B. C. Stickney* and *Melville E. Smilie* for the appellant.

*F. L. Laird* and *F. B. Thomas* for the appellee.

TAYLOR, J.   Homer W. Heaton died testate January 28,
1899.   By his will of Oct. 5, 1895, he created the following trust
among others: "The residue and remainder of my estate I give to
the aforesaid James W. Brock upon trust, and to his duly ap-
pointed successor in the trust hereby created, upon the trust that
all the income of said residue and remainder of my estate by way
of interest, dividends, rents and profits be paid each and every
year, or half or quarter year, if convenient, in the following man-
ner. that is to say, one-third part thereof to my son Charles H.

Heaton, for the full term and period of his natural life; and one-third part thereof to my son James S. Heaton for the full term and period of his natural life; and one-third part thereof to my grandchildren, Clifton M. Heaton and Ruby M. Heaton, in equal shares for the full term and period of the natural life of each one of them." After making provision for the disposition of the shares of such life beneficiaries as should decease during the term, the will further provides: "At the death of said Sarah S. Heaton (wife of Charles H. Heaton, mentioned elsewhere in the will) and my sons and grandchildren, the aforesaid trust and trusts are to be ended and all the property and estate held upon trust is given to the lawful issue of said grandchildren and their heirs in equal shares *per capita.*"

At the time of the testator's death he owned 105 shares of the capital stock of the Montpelier Savings Bank and Trust Company of the par value of $100 per share which was a part of the residue of his estate, and so a part of said trust fund. The testator gave positive directions that said stock, together with certain other property mentioned in his will, should be held until the termination of the trust. James W. Brock having resigned said trust, the appellee was, on Jan. 31, 1913, appointed his successor as trustee and is now acting as such.

On Dec. 15, 1913, the trustees of the Montpelier Savings Bank and Trust Company declared a dividend out of the surplus earnings of said bank under the following vote: "That a dividend of one hundred dollars per share payable in new capital stock from the surplus earnings of the bank be paid to the stockholders of record at the close of business Dec. 31, 1913, thereby increasing the capital stock to the sum of one hundred thousand dollars represented by one thousand shares of one hundred dollars each." At the time such dividend was declared said bank had no rule nor by-law touching its authority to declare dividends or increase its capital stock; so that its authority in this regard depended upon its charter and the general law.

It appears from the agreed statement of facts that at the time of the testator's death the surplus earnings of the bank were upwards of fifty thousand dollars; and that from that time to the time said dividend was declared there had been a gradual increase of its surplus earnings, so that when said dividend was declared "the surplus earnings of said bank exceeded twice the amount of said surplus earnings at the time of the decease of said Homer

W. Heaton by more than the amount of this dividend.'' It also appears that there has been a corresponding increase in the volume of the bank's business since said dividend was declared.

Pursuant to said vote said dividend was paid to and accepted by all of the stockholders of the bank in new capital stock, and the dividend of 105 shares on account of the original stock held as part of the trust fund is now in the hands of the bank as trustee. Said bank claims to hold the new shares as part of the trust fund, while Charles H. Heaton, Clifton M. Heaton and Ruby Heaton-Marks, the surviving life beneficiaries, claim said stock as income of the trust fund. The question arises on an appeal from the decree of the probate court upon the allowance of the annual account of the trustee. That court ordered that the 105 shares of new stock be charged to the account of income and paid and delivered in equal shares to the life tenants, from which decree the trustee appealed. The case was heard in the county court on an agreed statement of facts, and to its judgment affirming the decree of the probate court the trustee excepted. The single question before us is whether said dividend under the will is part of the *corpus* of the fund which the trustee should hold for the remaindermen, or income of such fund which should pass to the life tenants.

No question is made as to the authority of the bank to declare this dividend. There was nothing in its charter nor in the general law then in force forbidding such a dividend as the one in question. (See No. 150, Acts of 1915, Sec. 3). In the absence of some statute to the contrary there is no legal objection to a corporation's declaring a dividend payable in stock out of its net income, leaving its ordinary capital unimpaired. Such a dividend operates to transfer distributable assets to the individual ownership of the stockholders, thus changing accumulated surplus into permanent capital, and thereby creating an additional liability of the corporation. The vote by which the dividend was declared recites that it was from the surplus earnings of the bank, and it will be presumed that it was declared from surplus earnings available for division among the stockholders. *Walker* v. *Walker*, 68 N. H. 407, 39 Atl. 432; *Boardman* v. *Boardman*, 78 Conn. 451, 62 Atl. 339, 12 L. R. A. (N. S.) 784; *Kalback* v. *Clark*, 133 Ia. 215, 110 N. W. 599, 12 L. R. A. (N. S.) 801, 12 Ann. Cas. 647.

Moreover, the transfer of surplus to capital would not impair the surplus fund that the bank was required by law to reserve, as paid-in capital is treated as part of such fund. See No. 158, Acts of 1910, Sec. 69.

We may start our inquiry with the proposition which will be recognized as elementary that the income of trust funds belongs to the life tenant, while the *corpus* of the fund belongs to the remainderman. The difficulty lies in determining what is income and what *corpus* in the particular case, especially when a dividend in the form of stock is declared by the corporation. When the question is settled whether the dividend is to be regarded as income or as capital of the trust fund, the respective rights of the life tenant and remainderman are readily determined. While the case is one of first impression in this State, the question as to the conflicting rights of life beneficiaries and remaindermen to stock dividends has frequently arisen in other jurisdictions and it has vexed the courts to formulate a rule that would invariably work out exact justice between the parties.

The early English rule, adopted in 1799, gave all extraordinary or unusual dividends declared during the life estate, whether in stock or cash, to the *corpus* and not to the income. *Brandon* v. *Brandon,* 4 Ves. Jr. 800; *Irving* v. *Houston,* 4 Paton, 521. While this rule was recognized in England as late as 1856, (*Cummings* v. *Boswell,* 2 Jur. N. S. 1005), there were frequent departures from it among the earlier cases. See *Preston* v. *Melville,* 16 Sim. 163; *Prince* v. *Anderson,* 15 Sim. 473; *Johnson* v. *Johnson,* 15 Jur. 714. The rule is now practically obsolete in England and of little more than historical value. The modern English rule is very much the same as the rule, hereinafter referred to as the Massachusetts rule. See *Bouch* v. *Sproule,* 12 App. Cas. 385; *In re Hopkins,* 18 L. R. Eq. 696; *Jones* v. *Evans,* 107 L. T. Reports. (Ch. Div.) 604.

An examination of the American decisions discloses three distinct lines of cases. For convenience their doctrines may be designated as the Massachusetts rule, the Pennsylvania rule and the Kentucky rule. It is worthy of notice that the American courts view the question from a common standpoint. They all expressly or impliedly recognize that the question whether a distribution made by a corporation during the continuance of a life estate is to be regarded as income or as capital is primarily one of construction,—a question of the intention of the creator of

the trust manifested by the will or other instrument by which the right to the income is, for the time being, severed from the *corpus.* The difficulty arises when the will or other instrument merely directs the payment of "earnings" or "income" or "dividends" to the life tenant and is not sufficiently explicit for the guidance of the court when the distribution by the corporation is of an unusual or extraordinary nature. As we shall see, the application of this principle plays an important part in working out the several rules adopted by the courts of this country, which though starting from a common premise, reach widely divergent conclusions.

The Massachusetts rule regards all cash dividends, however large, as income and stock dividends, however made, as capital. This rule was first announced in *Minot* v. *Paine,* 99 Mass. 108, 96 Ann. Dec. 705. It will be observed that under this rule it makes no difference when the dividend was earned provided it was declared out of net earnings during the life tenancy. It makes the character of the dividend, whether in cash or stock, the criterion of the rights of the parties.

The Pennsylvania rule, declared in Earp's Appeal, 28 Pa. 368, is that net earnings when declared as dividends, whether in stock or cash, belong to the life tenant provided such earnings have been made, or have accumulated, since the stock in question was held as part of the trust estate. The rule differs from the Massachusetts rule in two important particulars. (1) It makes no difference whether the dividend is declared in stock or cash; and (2) it takes into account the time when the earnings were made or accrued. It does not make the character of the dividend the criterion but looks to its source to determine the rights of the parties. It inquires as to the time covered by the accumulation of earnings from which the dividend was declared relative to the inception of the life estate. Thus, if it is ascertained that the entire fund accumulated before the inception of the life estate, the Pennsylvania rule awards the entire dividend, whether cash or stock, to the *corpus;* and, if it is ascertained that the entire fund accumulated after the inception of and during the continuance of the life estate, it awards the entire dividend, whether stock or cash, to income. Further, if it is found that the fund from which the dividend was declared accumulated partly before and partly after the inception of the life estate, it apportions the

dividend, whether stock or cash, between the life tenant and remainderman.

The third rule was formerly known as the New York and Kentucky rule, but since *In re Osborne*, 209 N. Y. 450, 103 N. E. 723, 823, 50 L. R. A. (N. S.) 510, Ann. Cas. 1915 A. 298, is referred to as the Kentucky rule, as in that case the Court of Appeals of New York receded from its former position and adopted the apportionment feature of the Pennsylvania rule. The Kentucky rule is like the Pennsylvania rule in that it makes no distinction between cash and stock dividends declared out of surplus earnings, but differs therefrom in holding that dividends, whether stock or cash, are non-apportionable and are considered as accruing in their entirety as of the date when they are declared. See *Hite* v. *Hite,* 93 Ky. 257, 20 S. W. 778, 19 L. R. A. 173, 40 Am. St. Rep. 189.

We are not now concerned with the point of difference between the Pennsylvania and Kentucky rules, as the question of apportionment is not involved in this case. The surplus earnings of the bank at the time the dividend was declared were more than three times what they amounted to at the time of Mr. Heaton's death; so the stock dividend did not entrench in any degree upon the capital of the trust fund created by the will, as there still remained more than twice as much surplus as there was at the time of the testator's death. The whole amount transferred by the dividend from surplus to invested capital may properly be considered as earnings of the bank during the life tenancy.

Having in mind that the intention of the testator is to control if it can be gathered from the will, we have carefully examined its provisions in the light of the surrounding circumstances but find there no satisfactory solution of the question. The provision that all the income of the trust fund, the bank stock in question, "by way of interest, dividends, rents and profits" should go to the life tenant is broad enough to include by implication this stock dividend. The word "dividends" considered with its context might mean more than ordinary cash dividends; but the will lacks certainty on this point, there not being enough in the will to make it clear that the testator contemplated such a dividend as the one in controversy, so we must look to the law to determine whether it should be regarded as income of the trust fund or as part of the fund itself.

It is impossible to reconcile the decisions of the courts that follow the Massachusetts rule with those that adopt the Pennsylvania rule either with or without its apportionment feature. It would not be profitable to attempt any extended review of the conflicting decisions as they are readily accessible. A complete review of the cases will be found in the following notes: 118 Am. St. Rep. 162; 12 Ann. Cas. 647; Ann. Cas. 1912 B. 1218; Ann. Cas. 1915 A. 311; 2 L. R. A. (N. S.) 768; 35 L. R. A. (N. S.) 563; 50 L. R. A. (N. S.) 510; 7 R. C. L. 289-292. It will answer our present purpose to examine a few of the leading cases to discover the reasons advanced by the courts for their decisions. The Massachusetts rule has found favor outside that jurisdiction in Connecticut, Rhode Island, Illinois and possibly Ohio and has been approved by the Supreme Court of the United States. See *Smith* v. *Dana,* 77 Conn. 543, 60 Atl. 117, 69 L. R. A. 76, 107 Am. St. Rep. 51; *In re Brown,* 14 R. I. 371, 51 Am. Rep. 397; *DeKoven* v. *Alsop,* 205 Ill. 309, 68 N. E. 930, 63 L. R. A. 587; *Wilberding* v. *Miller,* 88 Ohio 609, 106 N. E. 665; *Gibbons* v. *Mahon,* 136 U. S. 549, 10 Sup. Ct. 1057, 34 L. ed. 525. The Supreme Court of Ohio quotes with apparent approval the arguments in support of this rule but disposes of the case, as it would appear, on the express intention of the testator as gathered from the will. Among the courts that follow the Pennsylvania rule, either with or without its apportionment feature, are the courts of last resort in Maine, New Hampshire, New York, New Jersey, Delaware, Maryland, Kentucky, Tennessee, So. Carolina, Mississippi, Iowa, Minnesota and Wisconsin. See *Gilkey* v. *Paine et al.,* 80 Me. 319, 14 Atl. 205; *Holbrook* v. *Holbrook,* 74 N. H. 201, 66 Atl. 124, 12 L. R. A. (N. S.) 768; *McLouth* v. *Hunt,* 154 N. Y. 179, 48 N. E. 548, 39 L. R. A. 230; *Van Doren* v. *Olden,* 19 N. J. Eq. 176, 97 Am. Dec. 650; *Bryan* v. *Aiken,* (Del.) 86 Atl. 674, 45 L. R. A. (N. S.) 477; *Thomas* v. *Gregg,* 78 Md. 545, 28 Atl. 565, 44 Am. St. Rep. 310; *Hite* v. *Hite,* 93 Ky. 257, 20 S. W. 778, 19 L. R. A. 173, 40 Am. St. Rep. 189; *Pritchitt* v. *Nashville Tr. Co.,* 96 Tenn. 472, 36 S. W. 1064, 33 L. R. A. 856; *Cobb* v. *Fant,* 36 S. C. 1, 14 S. E. 959; *Wallace* v. *Wallace,* 90 S. C. 61, 72 S. E. 553; *Kalbach* v. *Clark,* 133 Ia. 215, 110 N. W. 599, 12 L. R. A. (N. S.) 801, 12 Ann. Cas. 647; *Goodwin* v. *McGaughey,* 108 Minn. 248, 122 N. W. 6; *Soehnlein* v. *Soehnlein,* 146 Wis. 330, 131 N. W. 739.

The decisions in Georgia are influenced by statute and so shed little if any light on the discussion.

The argument in support of the Massachusetts rule is based upon the assumption that it is within the discretion of the corporation, acting in good faith, to determine whether earnings shall be withheld or distributed, and that its action in that respect, within the limits of good faith, is binding upon the parties; and that consequently the life tenant has no right in respect of any earnings accumulated by the corporation, whether before or after the inception of the life estate, unless and until the corporation has declared a distribution of such earnings.    In other words, that until such a distribution has been declared any enhancement in value of the stock by reason of the withholding of earnings inures entirely to the benefit of the *corpus,* and the life tenant derives no advantage therefrom.    It was said in *Minot* v. *Paine, supra*: ''The money in the hands of the directors may be income to the corporation; but it is not so to a stockholder till a dividend is made; and when the company invests it in buildings or machinery, or in railroad tracks, depots, rolling stock, or any other permanent improvements, for enlarging or carrying on their legitimate business, it never becomes income to the shareholder.    The investment becomes an accretion to the capital; and it is equally so whether they increase the number of shares, or leave the shares unaltered.    Or if the number of shares is increased for purposes merely speculative, it is an increase of capital stock and not of income; and it would be practically unwise for courts to go behind the action of the company to ascertain how they came by the funds out of which they declare either cash or stock dividends.    As the corporation is the legal owner of the property and has power, within the limits of its charter, to give to the shareholders either an increase of income or an increase of capital out of the money in its hands according to the discretion of its directors, it would seem to follow that an increase of capital should be kept for the remainderman and an increase of income should be paid to the tenant for life.''    The court adopted the rule as a matter of expediency, saying: ''A trustee needs some plain principle to guide him; and the *cestui que trust* ought not to be subjected to the expense of going behind the action of the directors and investigating the concerns of the corporation, especially if it is out of our jurisdiction.    A simple

rule is to regard cash dividends, however large, as income and stock dividends, however made, as capital.''

While the rule is simple and convenient and is calculated to relieve the courts, as well as trustees, of much trouble, it does not commend itself for its justice and equity. It has been frankly admitted by the court of its origin that the rule was arbitrary and sometimes defeats the intention of the testator, (See *D'Ooge* v. *Leeds,* 176 Mass. 558, 57 N. E. 1025), and another court that follows it has stated that it was not claimed for the rule that its application would accomplish exact justice in all cases. *Boardman* v. *Boardman,* 78 Conn. 451, 62 Atl. 339, 12 L. R. A. (N. S.) 784. One is led to question whether in their desire to formulate a workable rule of easy application the courts that adopt the Massachusetts rule have not unconsciously preferred expediency to justice. The hardship that would result to a life tenant under this rule in case the corporation pursued the policy of declaring stock dividends is perfectly apparent. The injustice attending its application has repeatedly moved the court that announced it to follow the spirit of the Pennsylvania rule, though at the same time reaffirming *Minot* v. *Paine.* The courts professing to follow the rule look behind the vote declaring the dividend; thus regarding substance and not form, and do not hesitate to award a dividend in cash to the remainderman when investigation shows it to have been declared from the *corpus* of the fund; and in some cases have gone so far as to hold a dividend in stock to have been in substance a cash dividend. *Heard* v. *Eldredge,* 109 Mass. 258, 12 Am. Rep. 687; *Leland* v. *Hayden,* 102 Mass. 542; *Davis* v. *Jackson,* 152 Mass. 58; *Lyman* v. *Pratt,* 183 Mass. 58, 66 N. E. 423; *Green* v. *Bissell,* 79 Conn. 547, 65 Atl. 1056, 8 L. R. A. (N. S.) 1011, 118 Am. St. Rep. 156, 9 Ann. Cas. 287. But for the most part they regard a dividend in stock, even from the earnings of the corporation accumulated during the life tenancy, as belonging to capital and not income. The tendency of the Supreme Judical Court of Massachusetts toward a rule more liberal to the life tenant is indicated in its later decisions. See *Gray* v. *Hemenway,* 212 Mass. 239, 98 N. E. 789; *Boston Safe Deposit & Trust Co.* v. *Adams,* 219 Mass. 175, 106 N. E. 590. It is also significant that the courts adhering to the Massachusetts rule pretty generally hold that a dividend payable optionally in cash or stock is a cash dividend, even when stock is taken, and so belonging to the life tenant. *Hyde* v. *Holmes,* 198 Mass. 287, 84 N. E. 318;

*Newport Trust Co.* v. *Van Rensselaer*, 32 R. I. 231, 78 Atl. 1009, 35 L. R. A. (N. S.) 563.

*Gibbons* v. *Mahon*, 136 U. S. 549, 10 Sup. Ct. 1057, 34 L. ed. 525, decided in 1890, is much relied upon by the courts following the Massachusetts rule. The case follows and adopts the reasoning of *Minot* v. *Paine*. After saying that money earned by a corporation remains the property of the corporation and does not become the property of the stockholders unless and until it is distributed among them by the corporation, and that its undistributed earnings may be treated and dealt with by the corporation either as property or as an addition to capital, the opinion continues: "Which of these courses shall be pursued is to be determined by the directors with due regard to the condition of the company's property and affairs as a whole; and, unless in case of fraud or bad faith on their part, their discretion in this respect cannot be controlled by the courts." Based upon this reasoning the court held that, reserved and accumulated earnings, so long as they are held and invested by the corporation, being a part of the corporate property, it would follow that the interest therein represented by each share is capital and not income of that share as between the life tenant and remainderman.

In support of this decision the court argues further that the question whether the profits of the corporation should be distributed as income to the life tenant or retained as capital, thus inuring to the benefit of the remainderman, is a question to be determined by the action of the corporation itself in the proper administration of its affairs; and cannot, without producing great embarrassment and inconvenience, be left open to be tried and determined by the courts. The decision evidently turns upon a presumption as to the intention of the testator. The Court says: "In ascertaining the rights of such persons the intention of the testator, so far as manifested by him must of course control; but, when he has given no special direction upon the question as to what shall be considered principal and what income, he must be presumed to have had in view the lawful power of the corporation over the use and apportionment of its earnings and to have intended that the determination of that question should depend upon the regular action of the corporation with regard to all its shareholders. Therefore, when a distribution of earnings is made by a corporation among its stockholders, the question whether such distribution is an apportionment of additional

stock or a division of profits and income depends upon the substance and intent of the action of the corporation, as manifested by its vote or resolution; and ordinarily a dividend declared in stock is to be deemed capital, and a dividend in money is to be deemed income of each share.'' In support of this view it is argued that a stock dividend really takes nothing from the property of the corporation and adds nothing to the interests of the shareholders; that the only change is in the evidence which represents the shareholders' interests, the new shares and the original shares together representing the same proportional interest that the original shares represented before the issue of the new ones.

*Gibson* v. *Mahon* has never been reviewed by the Supreme Court of the United States and so has only the weight of a single decision, although the standing of the court entitles it to careful consideration. It is an interesting fact in this connection that Mr. Justice Gray who wrote the opinion was a member of the Supreme Judicial Court of Massachusetts when *Minot* v. *Paine* was decided, which in a measure accounts for the similarity of reasoning in the two cases.

The Supreme Court of Illinois held in *De Koven* v. *Alsop,* 205 Ill. 309, 68 N. E. 930, 63 L. R. A., 587, that a stock dividend which evidences the conversion by the corporation of earnings accumulated during the testator's life time into capital of the corporation goes to the remainderman as a part of the *corpus* of the estate; and reaffirmed this decision in *Blinn* v. *Gillett*, 208 Ill. 473, 70 N. E. 704, 100 Am. St. Rep. 234, and *Billings* v. *Warren,* 216 Ill. 281, 74 N. E. 1050. It does not appear that any of the stock dividends involved in these cases covered accumulations made after the death of the testator. That being so, the result is the same as it would have been had the court followed the other rule; but it appears that the court is committed to the Massachusetts rule, as it cites with approval *Minot* v. *Paine* and *Gibbons* v. *Mahon* and adopts their argument. No additional argument is advanced in support of its conclusions.

The later English rule is similar to the Massachusetts rule and is based upon much the same reasoning. Melville J., in *Jones* v. *Evans,* 1 Ch. 23, 82 L. J. Ch. Div. 12, decided in 1912 says: ''From the necessity of the case it has always been held that, as between tenant for life and remainderman, the company must decide whether a particular fund is to be treated as capital

36

or whether it is to be divided as income by way of dividend; and one does not see very well how any other rule could apply.'' The reason for the rule assigned by the English courts is tersely summed up in *Banch* v. *Sproule,* 29 Ch. Div. 638, ''What the company says is income shall be income, and what it says it capital shall be capital.'' Referring to the distinction sought to be made between stock and cash dividends, Lord Chancellor Eldon in *Paris* v. *Paris,* 10 Ves. 184, used a homely but expressive phrase. He said: ''As to the distinction between stock and money, that is too thin; and if the law is that extraordinary profit, if given in the shape of stock, shall be considered capital, it must be capital if given as money.''

It seems to us that it does not follow as a necessary conclusion, assuming that the corporation or its directors have the authority claimed for them over the disposition of its surplus earnings, that the action of the corporation or its directors is conclusive of the rights of the life tenant and remainderman, and that therein lies the weakness of the argument. It fails to distinguish capital as regards the corporation and its stockholders from capital or *corpus* of the trust fund. Moreover, it rests upon a presumption that is altogether artificial as a rule of construction and little less than violent when applied to the facts of this case, where the testator was making provision for his children and grandchildren, who were at the time members of his own immediate family, by way of life income with remainder to a succeeding generation as yet unborn. If any presumption is to be indulged, it seems more rational to presume that the creator of the trust intends, in the absence of anything to the contrary, that the life beneficiary shall receive all the profits of the stock earned during the life tenancy which may be released from corporate control by distribution among the stockholders during the existence of the life estate, in whatever form the distribution may be made. This recognizes the assumed right of the corporation to distribute surplus earnings at such times and in such manner as best suits the purposes of the corporation, and at the same time take into account the evident distinction between capital of the corporation and *corpus* of the trust fund when the rights of the life tenant and remainderman are being considered. As said in *Soehnlein* v. *Soehnlein,* 146 Wis. 330, 131 N. W. 739: ''To say that when a stockholder conveys his stock, as in this case, he thinks otherwise than that the term owner will take all

benefits as to such stock of dividends out of earnings made during such term, regardless of the manner of making the dividends, seems contrary to common knowledge.''

Mr. Thompson in his work on corporations says in criticism of this rule: ''The Massachusetts doctrine seems to be a rule of mere convenience and not a rule of justice. It loses sight of the real question under consideration which is, What is capital of the estate disposed of by will and not what is capital of the corporation? It goes entirely beyond tenable grounds when it allows this question to be determined, not by the judicial courts upon a view of the real substance of the case, but by a board of directors, that is, by a committee of persons entirely foreign to the will, in passing a resolution declaring a dividend.'' 2 Thomp. on Cor. §2222. The same author expresses a clarifying truth when he says: ''Instead of attempting to lay down a hard and fast rule on the subject which shall be applicable to all cases—and herein lies the chief mistake which the courts have made in dealing with it—it should be determined upon the consideration of the actual nature of the dividend in each particular case.'' 2 Thomp. on Cor. §2192.

The courts that reject the Masschusetts rule generally agree that the action of the corporation converting earnings into capital gives them that character for all corporate purposes, but they hold that the action of the corporation does not bind the life tenant and remainderman and that either can always show the true nature and source of the dividend in spite of any act or declaration of the corporation. This is the evident trend of the later decisions and, as we have seen, is in a measure shared by the courts that profess to follow *Minot* v. *Paine* and *Gibbons* v. *Mahon*. We shall need to examine but few of the numerous decisions following the Pennsylvania rule in order to contrast their argument with that of the cases based upon the Massachusetts rule.

Earp's Appeal, 28 Pa. 368, was decided in 1857. By his will Robert Earp created a trust for the benefit of his children, the rents, income and interest of the trust fund to go to them during life with remainder over. The trust fund consisted in part of 540 shares of stock of a certain manufacturing corporation, of the par value of $50 but worth $125 per share at the time of the testator's death, owing to surplus earnings accumulated during his lifetime. The surplus of the corporation con-

tinued to increase after the testator's death until the stock divi-
dend was declared. This was accomplished by issuing new
shares of the par value of $80 per share in lieu of the original
stock. By the redistribution of stock, Robert Earp's estate re-
ceived 1,350 shares of the new stock, surrendering therefor the
original shares. The court argued that the testator's interest
in the corporation at the time of his death amounted to $67,500;
that it would have produced that sum if sold at that time, that
the omission to sell and invest the proceeds for the purposes of
the trust could not change the rights of the parties. It was held
that the life beneficiary had no right to the income accumulated
before the testator's death, but that the profits arising since his
death were income within the meaning of the will.

Speaking of the right of the corporation to deal with its sur-
plus earnings, the court says: "The managers might withhold
the distribution of it for a time for reasons beneficial to the in-
terests of the parties entitled; but they could not by any form
of procedure whatever, deprive the owners of it and give it to
others not entitled. The omission to distribute it semi-annually
as it accumulated, makes no change in its ownership. The distri-
bution of it among the stockholders in the form of new certificates
has no effect whatever upon the equitable right to it. It makes
no kind of difference whether this fund is secured by 540 or 1350
certificates. Its character cannot be changed by the evidence
given to secure it. Part of it is principal, the rest is income
within the meaning of the will. The principal must remain un-
impaired during the lives of the appellants, and the income aris-
ing since the death of the testator is to be distributed among
them."

*Pritchitt* v. *Nashville Trust Co.,* 96 Tenn. 472, 36 S. W.
1064, 33 L. R. A. 856, one of the later cases on the subject, is es-
pecially instructive. It involved stock dividends on account of
surplus accumulated after the death of the creator of the trust.
The court points out that present enjoyment is the very essence
of a life estate; that without it the gift would be meaningless and
worthless. The case contains an exhaustive review of *Gibbons* v.
*Mahon*; and, though concurring in all that the Federal Supreme
Court said concerning the authority of the corporation over
dividends, the court dissents vigorously from the conclusion as to
the effect of corporate action upon life tenants and remainder-
men. To quote from the opinion: "There can be no doubt that

reserved and accumulated earnings are corporate property. Nevertheless, we are unable to see how that fact determines or affects the question of interest therein as between life tenant and remainderman of shares. Those persons acquire their interest under the will or deed, and not through any action of the corporation.'' Further, in commenting upon what is said in *Gibbons* v. *Mahon* to the effect that the only change produced by a stock dividend is in the evidence which represents the stockholders' interest, the court says: ''Obviously, this change in the evidence of the shareholder's interest separates his income on the investment from his capital invested, the new shares representing his income, and the old ones his capital; and it would seem that a separation of the combined interests of life tenant and remainderman is wrought by the same process, the new shares standing for income of the trust estate and the old ones for its capital, at least to the extent that the new capitalization includes net earnings made since the trust took effect. The trustee has made no new investment. He has only received new shares representing profits of the investment made by the founder of the trust. How can the facts that net earnings are made capital to the company, and that the issuance of stock dividends thereon do not diminish corporate property, prevent such dividends from being income to the holder of old shares, whether that holder be absolute owner or only tenant for life?'' *Bryan* v. *Aiken*, (Del.) 86 Atl. 674, 45 L. R. A. (N. S.) 477, decided by the Supreme Court of Delaware in 1913, gives an exhaustive review of the authorities. With reference to the effect of the action of the corporation upon the rights of the life tenant and remainderman of corporate stock the court says: ''Although a corporation has the right to set apart or reserve a portion of its net earnings for a period of years and treat them as capital, *  *  * yet, if it subsequently divides such net earnings by declaring a dividend in cash, in stock, or in both, based upon such earnings, it is a distribution of profits. When the necessity for the reservation ceases and the reserve fund is divided among the shareholders, the question whether it is income or capital depends upon its origin for their source is not changed by the delay in distribution. If it was originally taken from the net earnings, it belongs to the tenant for life, if distributed in his lifetime.''

The discussion of the question by the Supreme Court of Kentucky in *Hite* v. *Hite*, 93 Ky. 257, 20 S. W. 778, 19 L. R. A.

173, 40 Am. St. Rep. 189, is worthy of special notice. The court grants; that, as between the company and the shareholder, the action of the directors in determining whether earnings shall be capitalized or paid out in cash is conclusive; but holds that, when a dividend is once declared, although in stock, it is the province of the law to determine their ownership,—whether they belong to the *corpus* of the estate and are to benefit the remainderman, or whether they shall go to the life tenant as income. Speaking of a stock dividend based upon the earnings of the company the court said: "It is in reality, whether called by one name or another, the income of the capital invested in it. It is but a mode of distributing the profit. If it be not income, what is it? If it is, then it is rightfully and equitably the property of the life tenant. If it be really profit, then he should have it whether paid in stock or money. A stock dividend proper is the issue of new shares paid for by the transfer of a sum equal to their par value from the profit and loss account to that representing capital stock; and really a corporation has no right to declare a dividend, except from its earnings and a singular state of case—it seems to us an unreasonable one—is presented if the company, although it rests with it whether it will declare a dividend, can bind the courts as to the proper ownership of it, and by the mode of payment substitute its will for that of the testator, and favor the life tenant or the remainderman, as it may desire. It cannot in reason be considered that the testator contemplated such a result. The law regards substance and not form, and such a rule might result not only in a violation of the testator's intention, but it would give the power to the corporation to beggar the life tenants who, in this case, are the wife and children of the testator, for the benefit of the remaindermen, who may perhaps be unknown to the testator, being unborn when the will was executed. We are unwilling to adopt a rule which, to us, seems so arbitrary and devoid of reason and justice."

To much the same effect is *McLouth* v. *Hunt*, 154 N. Y. 179, 48 N. E. 548, 39 L. R. A. 230; and *Soehnlein* v. *Soehnlein*, 146 Wis. 330, 131 N. W. 739. In *Thomas* v. *Gregg*, 78 Md. 545, 28 Atl. 565, 44 Am. St. Rep. 310, the Supreme Court of Maryland, after a careful review of the authorities, reaches the conclusion that there are but few cases, if any, that can properly be construed to mean that, although the stock dividends only include net earnings, and they were intended to be distributed as income,

and not as capital, yet the life tenants must be deprived of them simply because they were stock dividends. It was held: "When it is possible for the court to ascertain to any certainty whether the distribution in the stock dividend includes net earnings, and, if so, what proportion, and also whether such earnings were intended to be made a part of the capital, or merely to be used temporarily, with the intention on the part of the directors of refunding them to the shareholders as income, we think it is the duty of the court to make such investigations and dispose of the stock in an equitable way between the tenants for life and the remaindermen."

If we regard the intention of the trustees of the bank in declaring the dividends of any importance, it is clear from the vote declaring it that the dividend in the case at bar was intended as a distribution of surplus among the stockholders which had been accumulated at the expense of regular cash dividends. Though payable in stock, it was as much compensation to the stockholders for loss of income as it would have been if paid in cash.

The Pennsylvania rule has been recently restated by the Court of Appeals in *Re Osborne,* 209 N. Y. 450, 103 N. E. 723, 50 L. R. A. (N. S.) 510, Ann. Cas. 1915 A, 298: "Extraordinary dividends, payable from the accumulated earnings of the company, whether payable in cash or stock, belong to the life beneficiary, unless they entrench, in whole or in part, upon the capital of the trust fund as received from the testator or maker of the trust or invested in stock, in which case such extraordinary dividends should be returned to the trust fund or apportioned between the trust fund and life beneficiary in such a way as to preserve the trust fund." This is in effect what the Supreme Court of Pennsylvania has held since the time of Earp's Appeal. See *Appeal of Boyer,* 224 Pa. 144, 73 Atl. 320; *In re Stokes Estate,* 240 Pa. 277, 87 Atl. 971.

Most of the authorities in this country, including the Federal Supreme Court, recognize that the owner of corporate stock may convey the beneficial interest therein for a time to one and the whole ownership in remainder to another, unhampered by any power lodged in the corporation to disturb the purpose of the conveyance. It follows that the controlling factor is the intention of the creator of the trust, expressed in the will or other instrument creating the trust, or presumed by the law, in the ab-

sence of anything therein from which it can be ascertained. Whenever a distribution of earnings is made, whatever its form, the distributive share, so far as the owner of the stock is concerned, is income and for that reason an incident of the ownership of the stock during the period of accumulation, although inchoate until distributed by the corporation. If the testator had been living at the time the dividend in question was declared, unquestionably the new shares would have represented to him income on his original investment. He could have disposed of them without diminution of the investment represented by the value of the original shares as of the date of his death. With his estate they stand the same, only that now two classes are interested,— the life tenants entitled to the income and the remaindermen entitled to the *corpus* of the fund. In construing his will it is only reasonable to presume that the testator used the word "income" in the sense it would have when applied to the stock while he was living; so that what would have been income to him, if living, should be regarded as income to his estate after his death. This is the doctrine of the Pennsylvania rule and accords with what we regard as the decided weight of authority.

Appellant's counsel refer to the animadversions of Stevens, V. C., on the Pennsylvania rule found in *Ballentine* v. *Young*, 79 N. J. Eq. 71, 81 Atl. 119, as indicating a disposition on the part of the New Jersey courts to follow the English rule. The views expressed were the personal views of the Vice Chancellor and cannot be taken as showing that the Court of Errors is inclined to depart from its former holdings.

It is claimed that the English rule is binding upon us by virtue of P. S. 1221, by which so much of the common law of England as is applicable to the local situation and circumstances is adopted as the law of this State. The question as to the binding effect of the decisions of the courts of England in cases arising here requiring the application of common law principles is for the first time presented to this Court. The question has arisen in some of the other states, most of which have statutes adopting the common law that are similar to ours. Some courts hold to the view that the common law thus adopted is identical with the decisions of the courts; or, in other words, they regard the common law of England as what the English courts make it. The predominating view, however, is that precedents do not constitute the common law but only serve to illustrate its principles;

that statutes adopting it do not require adherence to the deci-·
sions of the court of England even prior to the separation of the
colonies, in case the court considers subsequent decisions, either
in England or America, better expositions of the general prin-
ciples of the common law.    This view accepts what Sir Frederick
Pollock has called "the immemorial and yet freshly growing
fabric of the common law" as the guide, and not the decision of
any particular court at any particular time.    Whether our stat-
ute makes the decisions of the English courts controlling or leaves
the courts at liberty to decide for themselves the principle of law
applicable to the particular case depends upon the intention of
the Legislature to be gathered from the statute of adoption read
in the light of surrounding circumstances.

Followed to its logical conclusion the view that the common
law is what the English courts make it compels one of two results.
Either we must abide the time that the courts of England see fit
to modify their rules of law to meet changing conditions and
circumstances or we must regard the common law as inflexible,
depending upon the rule of decision prevailing in England at
the time of its adoption here.    It is clear that our Legislature
did not intend either result, as both are inconsistent with the
due administration of justice.    The founders of the State were
not unmindful of the necessity for a system of laws that would
readily adapt themselves to the changing conditions of society;
while the effect of the statute claimed by the appellant would
either petrify the common law as embodied in the decisions of
the English courts at the time of the separation, or would require
the courts to administer the common law blindly in accordance
with decisions of the courts of the country of which they had re-.
cently declared their independence.    The construction we give
to the statute is supported by the original statute of adoption en-
acted in 1779 by which it was provided "that the common law
as generally practiced and understood in the New England
States be, and is hereby established as the common law of this
State."    We are confirmed in this view by what Judge Nathaniel
Chipman says in his dissertation on the Act.    He says:   "By
the common law of England, exclusive of positive laws enacted
by statute, are understood those rules and maxims by which deci-
sions are made in their courts of law, whether in relation to the
mode of prosecuting a right or to the right itself—rules and
maxims which have been there adopted, 'time whereof the memory

of man runneth not to the contrary.' " He makes it clear that the act did not adopt the English precedents expositive of the common law, but rather its principles, when he says, quoting Lord Mansfield, "The law of England would be an absurd science indeed, were it decided upon precedents only. Precedents serve to illustrate principles and to give them a fixed certainty, but the law of England, * * * exclusive of positive law enacted by statute, depends upon principles." He continues: "We may lay it down that the statute gives the citizens of this State the rules, maxims and precedents of the common law so far as they serve to illustrate principles—principles only which, from the situation of society with us, exist in this State." 1 N. Chip. 117-139.

In *State* v. *Parker,* 1 D. Chip. 298, Judge Chipman says by way of caution, "I would not have it understood by anything which I have said that the court is limited by the precedents of decided cases at common law, or the research of the numerous and profound commentators. The common law, exclusive of positive law enacted by statute, depends on principles. Precedents and maxims serve to embody and illustrate principles to give them a fixed certainty." We have no doubt that the statute in question leaves the court free to inquire whether the reasoning of a particular case is satisfactory and to accept or reject the rule it announces. The responsibility of discovering and applying to the case in hand the proper principles of the common law as it prevails in this State rests upon the courts of the State to which have been committed the administration of the law. In discharging this duty it has always been their practice to give heed to the decisions of the English court whether rendered before or since the separation, giving them such weight as they are entitled to as evidence of what the law is; but we cannot agree that they are entitled to any such binding force as the appellant claims for them. See 5 R. C. L. 818; Notes Ann. Cas. 1913 E. 1222, 1232; *Williams* v. *Miles,* 68 Neb. 463, 94 N. W. 705, 96 N. W. 151, 62 L. R. A. 383, 110 Am. St. Rep. 431, 4 Ann. Cas. 306; *Rensselaer Glass Factory* v. *Reid,* 5 Cow. 587; *Forbes* v. *Scannell,* 13 Cal. 242; *Robert* v. *West,* 15 Ga. 122; *Cox* v. *Morrow,* 14 Ark. 603; *Com.* v. *York,* 9 Met. 93, 43 Am. Dec. 373; *Kallenbach* v. *Dickinson,* 100 Ill. 427, 39 Am. Rep. 47; *Morgan* v. *King,* 30 Barb. 13; *Marks* v. *Morris,* 4 Hen. & M. 463. Much light is shed upon this question in an article by Herbert Pape on English

Common Law in the United States, 24 Har. L. Rev. 6; also in an essay by Paul Samuel Reinsch on English Common Law in the American Colonies. 1 Anglo-American Legal History 367.

It is also said that the life tenants are not entitled to the enhanced value of the *corpus* of the fund, instancing the increase in value of the real property that forms part of this trust estate; but there is a clear distinction between accretions to the fund derived from earnings accumulated during the term and the enhanced value of the trust property due to other causes. The one is properly income while the other is not.

We do not regard the question of convenience, of which so much is said by the courts that follow the Massachusetts rule, as a serious objection. The latter rule, as applied in practice, is somewhat less simple and easy of application than the statement of it would seem to imply; for the reason that, as applied, it is always necessary to ascertain whether the distribution by the corporation is from earnings or income, or whether it represents a reduction of change in form of the capital, or an enhancement of the value of the capital assets by means other than the accumulation of earnings. But, despite the difficulties attending it, the court should endeavor in every case to do justice between the parties and at the same time effectuate the intention of the creator of the trust. We believe that this result is most closely approximated by classifying a dividend according to what it really represents and not according to the form in which it is declared. By the rule we adopt the life tenant receives all the profits of the corporation accumulated during the life of the trust which are released from corporate control and distributed among the stockholders during the life tenancy, regardless of the form of the distribution; and the remainderman receives at the end of the term the *corpus* of the trust fund undiminished in value from what it was at the inception of the trust, which is all that he can justly claim, unless the creator of the trust has evidenced an intention that he shall receive more. It works out exact justice between the parties and, we believe, will more often give effect to the unexpressed intention of the testator.

We therefore hold that the stock issued to the trustee was income of the trust fund belonging to the life tenants. The court below did not err in affirming the decree of the probate court.

*Judgment affirmed, to be certified to the probate court.*